**Timothy WILSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–93–00078–CR.**

Court of Appeals of Texas,
San Antonio.

Sept. 28, 1994.

Vincent Callahan, San Antonio, for appellant.

Steven C. Hilbig, Crim. Dist. Atty., Edward F. Shaughnessy, III, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Before BUTTS, RICKHOFF and HARDBERGER, JJ.

## OPINION

HARDBERGER, Justice.

A jury found appellant, Timothy Wilson, guilty of aggravated robbery and assessed his punishment at fifty years confinement in the Texas Department of Corrections. Appellant urges four points of error. We affirm the conviction.

Appellant's first point alleges error in admitting an audio tape of a conversation be-

tween the crime victim's father and the appellant. Appellant says the tape was not properly authenticated because the speaker's identity was not sufficiently established.

Identification of a voice may be based upon hearing the voice and recognizing it. It may also be identified by what is said in the conversation. Either, or both, meets the requirement of authentication or identification. Once this is established it is admissible. Tex.R.Crim.Evid. 901(b)(5); *Hasley v. State*, 786 S.W.2d 733 (Tex.App.—Beaumont 1989, pet. ref'd). Circumstantial evidence may be used to meet this requirement. *Palos v. United States*, 416 F.2d 438, 440 (5th Cir.1969); *Carbo v. United States*, 314 F.2d 718, 743 (9th Cir.1963). The identity of a caller can be demonstrated by self-identification coupled with additional circumstances, such as the context and timing of the call, the contents of the statement and disclosure of knowledge of facts known peculiarly to the speaker. *United States v. Orozco-Santillan*, 903 F.2d 1262, 1266 (9th Cir.1990).

The sole witness concerning the admissibility of the tape was Chester Strogen, the father of the complainant. Strogen testified that on Monday evening, February 8, 1992, he received a phone call at home. The caller identified himself as "T.W." and asked Strogen if his daughter would "testify at court Tuesday" (the first day of trial). The caller apologized for the crime and asked to speak with Nakia. Strogen told "T.W." that Nakia was not available. "T.W." asked Strogen whether Nakia would consider not testifying against *him* or dropping the charges against *him*. In addition, "T.W." told Strogen that he had not meant to hurt anyone and the gun only had one bullet in it at the time of the offense. Strogen was also told by "T.W." that his daughter's wallet would not have been taken had he known it belonged to a black girl. Finally, "T.W." informed Strogen that he knew Nakia was the person who needed to drop the charges because he had seen her name on some paper work in court that day while going through it with his attorney. We believe Strogen's testimony sufficiently establishes that appellant was the caller. The trial court did not abuse its discretion in admitting this audio recording

into evidence. *Edwards v. State*, 551 S.W.2d 731 (Tex.Crim.App.1977).

In his second point of error appellant contends that the trial court's instruction to disregard did not cure the admission of evidence of an extraneous offense.

During the course of the State's case in chief the trial court conducted a hearing outside the presence of the jury regarding the admissibility of the audio tape recording of the telephone conversation between appellant and Strogen. At the conclusion of the hearing the trial court overruled the appellant's objections to the admission of the tape. While the tape was being played for the jury, counsel objected on the basis that it contained extraneous misconduct involving threats. After listening to the tape outside the presence of the jury, the trial court sustained appellant's objection to admitting any part of the phone conversation that dealt with threats. After the jury returned the court instructed them as follows:

> Now, ladies and gentlemen, we have some new recording equipment. Number one, I think you are going to be able to hear better. Number two, portions of this tape are going to be read to you—will be played. Disregard anything you heard before the recess a few minutes ago and just consider what is being played for you at this time. Counsel get up here and play the counter numbers, and I want defense counsel to stand there and verify that the numbers which are being permitted to be played are, in fact, the ones that are being played.

Appellant contends that the trial court's instruction to disregard was insufficient to cure the error of allowing inadmissible portions of the tape to be played for the jury. However, appellant failed to object in the trial court to any insufficiencies in the instruction to disregard. Additionally, no further relief was requested, as a result nothing is preserved for appeal. *Butler v. State*, 872 S.W.2d 227, 236 (Tex.Crim.App.1994); Tex.R.App.P. 52(a). Appellant's second point of error is overruled.

In his Supplemental Brief to this court, Appellant raises a third point of error com-

plaining that the trial court erred by failing to find that the State exercised a preemptory challenge in a racially motivated manner and in violation of his right to equal protection under the Fourteenth Amendment of the United States Constitution. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

 The State may not exercise its preemptory challenges for purely racial reasons. *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In order to establish a prima facie showing of purposeful racial discrimination in jury selection the defendant must show the following: (1) that he is a member of a cognizable racial group; (2) that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the jury panel; and (3) that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the jury on account of their race. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723; *Keeton v. State,* 724 S.W.2d 58, 65 (Tex.Cr. App.1987).

After the defendant makes a prima facie showing of purposeful discrimination in selection of the jury panel the burden shifts to the State to come forward with a racially neutral explanation. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723. The trial court then has the duty to determine if the defendant established purposeful discrimination. *Batson,* 476 U.S. at 96–98, 106 S.Ct. at 1723–24.

The defendant has the burden "to persuade the trial judge by a preponderance of the evidence that the allegations of purposeful discrimination are true in fact." *Tompkins v. State,* 774 S.W.2d 195, 202 (Tex. Cr.App.1987) *aff'd,* 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989). The trial court's decision must be reviewed in the light most favorable to the ruling. *Woods v. State,* 801 S.W.2d 932, 935 (Tex.App.—Austin 1990). The trial court's decision will not be disturbed unless it is clearly erroneous. *Whitsey v. State,* 796 S.W.2d 707, 721–724 (Tex. Crim.App.1989).

In this case, appellant is an African–American. There were three African–Ameri-

cans on the jury panel. Of the three, one was struck by the prosecutor and one served on the jury. Appellant objected to the State's striking Casey Alexander, a black man, on the ground that the peremptory strike had been exercised for a purely racial reason. The trial court held a *Batson* hearing. The prosecutor testified that he struck Mr. Alexander not because he was black but because he was barely literate and was inattentive. At the conclusion of the *Batson* hearing the trial court denied the Appellant's motion. The State offered racially neutral explanations for the striking of Mr. Alexander. The trial court was not persuaded that the strike had been racially motivated. After reviewing the record in the light most favorable to the court's decision we hold that it was not clearly erroneous.

We overrule Appellant's third point of error.

The judgment is affirmed.