COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-036-CR

 

 

STEPHEN BRENT BATTEAS                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 396TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Appellant Stephen Brent
Batteas appeals his conviction for injury to a child causing serious bodily
injury.  The jury found Appellant guilty
and assessed a sentence of life imprisonment. 
The trial court sentenced Appellant accordingly.  In seven points, Appellant complains that the
trial court committed reversible error in overruling his motion to suppress the
second and third statements he gave to police, in admitting a 911 tape over
Appellant=s objection,
in denying Appellant=s motion for
an instructed verdict because the State failed to show due diligence by the
grand jury to ascertain the manner or means of causing injury, by refusing to
admit two prior inconsistent statements by a witness, in submitting paragraphs
one and two of the indictment that had previously been waived by the State, in
refusing to admit testimony concerning a prior demeanor of a crucial witness,
and in failing to charge the jury on the issue of voluntary intoxication as
mitigation in punishment.  We affirm.

BACKGROUND

Christin Chanel hired
Appellant, an ex-boyfriend, to care for her sixteen-month-old son, Zachary, for
a couple of weeks beginning in April 2002 until a permanent caretaker could
begin caring for Zachary.  On April 28,
2002, Chanel picked Appellant up from his home and drove him to her
apartment.  That evening, Chanel and
Appellant watched television together and then Appellant took Chanel=s car and left the apartment for a while.  After Appellant returned, Marcheta Paulina
Olson went to the apartment complex to meet him, and the two sat talking in the
car at the apartment complex.  Later,
Chanel called Appellant on Olson=s cellular telephone and asked him to return to the apartment so she
could go to her mother and stepfather=s horse stables where a horse was expected to give birth that evening.








Appellant and Olson returned
to the apartment and Chanel left to go to the horse stables.  When Chanel left the apartment, Zachary was
asleep in his crib.  Olson remained at
the apartment with Appellant when Chanel left. 
Olson was having problems with her contact lenses, so she and Appellant
went to the bathroom to find contact solution. 
While in the bathroom, Olson heard Zachary cry, and Appellant went into
the bedroom to check on him.  Appellant
told Olson that Zachary was fine. 

Appellant and Olson then
returned to the living room.  They heard
a noise coming from his room that sounded like a toy, so Appellant again
checked on Zachary and told Olson he was fine. 
Shortly thereafter, Olson left the apartment. 








At approximately 3:45 a.m.,
Appellant called 911 and reported that Zachary was not breathing.  When emergency personnel arrived, they found
Zachary laying on the sofa bed in the living room.  His body temperature was low, he was not
breathing, and he had no pulse.  Police
questioned Appellant as the paramedics tended to Zachary.  Appellant testified at a pretrial suppression
hearing that the officer instructed him to sit on the curb and he did not feel
free to leave.  Subsequently, police
called Chanel and informed her that Zachary had been transferred to the
hospital.  Police also called Olson back
to the scene to give a statement, and she arrived approximately twenty minutes
later. 

Appellant later agreed to
give a statement to police and was taken by patrol car to the police
station.  Appellant testified at the
pretrial suppression hearing that he felt like he had to ride in the police car
to the police station, and he did not feel free to leave while at the police
station.  Sergeant Arvin Campbell
testified that Appellant was not in custody when he gave the statement that
morning, but he was a suspect.  Sergeant
Campbell testified that he informed Appellant that he was not under arrest and
read him Miranda warnings.[2]  Appellant then wrote his statement out for
police.  When he finished giving his statement,
Appellant left the police station with Olson. 








A few days following the
incident, Sergeant John Van Ness went to Appellant=s house to obtain a second statement from Appellant.  Sergeant Van Ness did not take Appellant into
custody after he made his second statement. The following day, Sergeant Van
Ness went back to Appellant=s house to clarify some of the things that Appellant had previously
stated.  Sergeant Van Ness testified that
when he spoke with Appellant, Appellant was not under arrest and was not
handcuffed.  He further testified that he
never made any threats or promises to Appellant to encourage him to make the
statements. 

Zachary was pronounced dead
at the hospital the morning following the incident.  He had sustained severe blunt force trauma to
the head, which caused a large subdural hematoma, among other things. 

DOUBLE JEOPARDY

In his fifth point, Appellant
contends that the trial court committed reversible error in submitting
paragraphs one and two of the indictment, which had previously been waived by
the State.  The State contends that
Appellant failed to preserve his claim for review.








According to the rules of
appellate procedure, in order to preserve a complaint for our review, a party
must have presented to the trial court a timely request, objection, or motion
that states the specific grounds for the desired ruling with sufficient
specificity to make the trial court aware of the complaint, unless the specific
grounds were apparent from the context.  Tex. R. App. P. 33.1.  At trial, Appellant moved for an instructed
verdict on paragraphs one and two stating that Athe court will remember in the last trial the State waived those
counts, and we feel that [the State could not] now try to go on them because
they=ve already waived them.@  This objection was sufficient
to inform the trial court of the nature of Appellant=s complaint to give the trial court the opportunity to rule on the
objection, especially in light of the fact that the same trial judge presided
over both trials.  See id.  Therefore, we turn to the merits of Appellant=s double jeopardy contention. 

The indictment charged
Appellant for a single count of knowingly causing serious bodily injury to a child.  Count one of the indictment charged Appellant
with causing serious bodily injury in three separate paragraphs alleging
alternative means of charging this offense. 
The first paragraph charged him with causing serious bodily injury to
Zachary by manner and means unknown to the grand jury, the second paragraph
alleged that Appellant caused the serious bodily injury by shaking Zachary with
his hand, and the third paragraph alleged that Appellant caused the serious
bodily injury by striking Zachary with or against an object unknown to the
grand jury.  Count one of the indictment
also included an allegation that Appellant used a deadly weapon in committing
the offense.








Appellant had previously been
tried for charges stemming from the same 
incident, but the jury was unable to reach a verdict in the first
trial.  The trial court declared a
mistrial.  At the first trial, the State
waived paragraphs one and two of the indictment and proceeded solely on
paragraph three.  The docket sheet and
the judgment from the first trial indicate that Appellant entered a not guilty
plea only to paragraph three, and the jury was charged only on paragraph three.


At the second trial,
Appellant moved for an instructed verdict as to paragraphs one and two because the
State had waived the paragraphs in Appellant=s first trial.  The trial court
denied Appellant=s request
for an instructed verdict, but charged the jury only on paragraphs one and
three because the State later waived paragraph two of the indictment. 

The Double Jeopardy Clause of
the United States Constitution provides that no person shall be subjected to
twice having life or limb in jeopardy for the same offense.  U.S. CONST. amend. V.  Generally, this
clause protects against (1) a second prosecution for the same offense after
acquittal, (2) a second prosecution for the same offense after conviction, and
(3) multiple punishments for the same offense. 
Brown v. Ohio, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); Ex
parte Herron, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990) (op. on
reh'g).  In a jury trial, jeopardy
attaches when the jury is impaneled and sworn. 
Crist v. Bretz, 437 U.S. 28, 98 S. Ct. 2156 (1978);  Alvarez v. State, 864 S.W.2d 64, 65
(Tex. Crim. App. 1993). 








In Ex parte McAfee,
the court of criminal appeals considered a factual situation very similar to
the present case.  761 S.W.2d 771 (Tex.
Crim. App. 1988).  In McAfee, the
State abandoned the first paragraph of a two paragraph indictment in two
separate jury trials.  Id. at
771.  Both of these trials resulted in
hung juries.  Id.  McAfee later pleaded guilty to the first
paragraph of the indictment and received punishment of three years= confinement.  Id. at
772.  By a postconviction writ of habeas
corpus, McAfee argued his conviction was barred under the principle of double
jeopardy because the State had twice abandoned the first paragraph of the
indictment.  Id.  The court of criminal appeals disagreed,
holding that, absent a final judgment, McAfee remained  under the initial jeopardy; therefore, a
retrial for the same offense would not be double jeopardy.  Id. at 773. 

In the present case,
Appellant=s first
trial ended in a mistrial. Subsequently, when he was retried for the same
offense, he remained under the initial jeopardy.  See id.  Thus, we hold that Appellant was not twice
put in jeopardy for the charges included in the indictment.  We overrule Appellant=s fifth point.

ADMISSIBILITY OF THE SECOND
AND THIRD STATEMENTS 








In his first point, Appellant
complains that the trial court committed reversible error in overruling his
motion to suppress the second and third statements he gave to Sergeant Van
Ness.  He contends that, although he was
not in custody at the time he gave the second and third statements, he did not
feel free to leave, yet he was not Mirandized or informed of his right to
counsel.  The trial court determined that
the statements Appellant gave to Sergeant Van Ness were not custodial in
nature, and thus, the provisions of Texas Code of Criminal Procedure article
38.22 did not apply.








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  Therefore, we give
almost total deference to the trial court=s rulings on (1) questions of historical fact and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d).  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.

When reviewing a trial court=s ruling on a mixed question of law and fact, the court of appeals may
review de novo the trial court=s application of the law of search and seizure to the facts of the
case.  Estrada, 154 S.W.3d at
607.  When there are no explicit findings
of historical fact, the evidence must be viewed in the light most favorable to
the trial court=s
ruling.  Id.  We must uphold the trial court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.  Armendariz v. State,
123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974
(2004); Ross, 32 S.W.3d at 856; Romero, 800 S.W.2d at 543.  

The provisions of Article
38.22 and Miranda apply only to statements which stem from custodial
interrogation.  Miranda, 384 U.S.
at 444, 86 S. Ct. at 1612; Tex. Code
Crim. Proc. Ann. art. 38.22, ' 2 (Vernon 2005).  Custodial
interrogation is questioning initiated by law enforcement officers after a
person has been taken into custody or otherwise deprived of his freedom of
action in any significant way.  Oregon
v. Mathiason, 429 U.S. 492, 494, 97 S. Ct. 711, 713 (1977); Miranda, 384
U.S. at 444, 86 S. Ct. at 1612. 








In the past, the court of
criminal appeals has recognized four factors that are relevant to determining
whether a person is in custody:  (1) probable
cause to arrest, (2) subjective intent of the police, (3) focus of the
investigation, and (4) subjective belief of the defendant.  Dowthitt v. State, 931 S.W.2d 244, 254
(Tex. Crim. App. 1996).  Under Stansbury
v. California, factors two and four have become irrelevant except to the
extent that they may be manifested in the words or actions of police officers;
the custody determination is based entirely upon objective circumstances.  Dowthitt, 931 S.W.2d at 254; see
also Stansbury v. California, 511 U.S. 318, 322-23, 114 S. Ct. 1526,
1528-29 (1994).  Thus, a person is in
custody only if, under the circumstances, a reasonable person would believe
that his freedom of movement was restrained to the degree associated with a
formal arrest.  Dowthitt, 931 S.W.2d
at 254.  The reasonable person standard
presupposes an innocent person.  Id.  Additionally, being the focus of the
investigation, alone, does not equate to custody.  Meek v. State, 790 S.W.2d 618, 621
(Tex. Crim. App. 1990).








In the present case,
Appellant acknowledged that he was not in custody when he gave the second and
third statements to Sergeant Van Ness. 
Appellant simply argues that he did not feel free to leave; however, the
subjective belief of Appellant is irrelevant, because the determination is
whether a reasonable person in Appellant=s situation would feel free to leave. 
See Dowthitt, 931 S.W.2d at 254. 
Appellant=s only other
contention is that Sergeant Van Ness admitted that Appellant was a suspect at
the time he took the second and third statements, but the mere fact that
Appellant may have become the focus of the investigation does not equate to
custody.  See Meek, 790 S.W.2d at
621.

At the pretrial suppression
hearing, Sergeant Van Ness testified that he and Lieutenant Simonds interviewed
a female and inquired as to Appellant=s whereabouts because they wanted to speak with him and they did not
know where he was.  He testified that
shortly thereafter, Appellant contacted him and said he would speak with the
officers at his house.  Sergeant Van Ness
testified that the first time he and Lieutenant Simonds went to Appellant=s house, he informed Appellant that they were there because Appellant
allowed them to be there and that if he wanted them to leave at any time, it
was his right to request that they leave. 
After Appellant gave the second written statement, the officers left his
house, and Appellant was not arrested or taken to the police station at that
time. 








Sergeant Van Ness testified
that he contacted Appellant a second time and asked if he and Lieutenant
Simonds could return to clarify some inconsistencies between the
statements.  Again, he testified that he
informed Appellant that they were at his house because he allowed them to be
there and that they would leave upon Appellant=s request.  He also testified
that Appellant was free to leave at any time and was not under arrest.  Appellant then made the third statement to
police. 

The circumstances involved
demonstrate that Appellant was not in custody when he gave the second and third
statements to Sergeant Van Ness. Therefore, it was not error for Appellant=s statements to be used against him even though Miranda warnings
were not first administered to Appellant 
before he gave the statements.  We
overrule Appellant=s first
point.

ADMISSION OF THE 911 TAPE

In his second point,
Appellant contends that the trial court committed reversible error in admitting
the 911 tape over Appellant=s objection.  He contends that
the State did not meet the requirements for proper authentication because the
State failed to identify the voices on the tape.








We review a trial court=s admission or exclusion of evidence for an abuse of discretion.  Rankin v. State, 974 S.W.2d 707, 718
(Tex. Crim. App. 1996) (op. on reh=g); Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1991) (op. on reh=g).  A trial court does not abuse its discretion,
and we will not reverse a trial court=s ruling, unless the ruling falls outside the zone of reasonable
disagreement.  Rankin, 974 S.W.2d
at 718.  A trial court abuses its
discretion when it acts without reference to any guiding rules and principles
or acts arbitrarily or unreasonably.  Montgomery,
810 S.W.2d at 380.








Rule of evidence 901 governs
the authentication requirement for the admissibility of evidence and is the
only appropriate analysis for the authentication of recordings.  See Tex.
R. Evid. 901; Angleton v. State, 971 S.W.2d 65, 69 (Tex. Crim.
App. 1998).  Subsection (a) states that
the authentication requirement for admissibility of evidence is satisfied by
proof sufficient to support a finding that the matter in question is what its
proponent claims it is.  Tex. R. Evid. 901(a).  Subsection (b) provides a nonexclusive list
of methods to authenticate evidence.  Tex. R. Evid. 901(b).  One example given is the testimony of a
witness with knowledge that a matter is what it is claimed to be.  Tex.
R. Evid. 901(b)(1).  Another is A[i]dentification of a voice, whether heard firsthand or through mechanical
or electronic transmission or recording, by opinion based upon hearing the
voice at anytime under circumstances connecting it with the alleged speaker.@  Tex. R. Evid. 901(b)(5).  Additionally, the identity of a caller can be
demonstrated by self‑identification coupled with additional
circumstances, such as the context and timing of the call, the contents of the
statement, and disclosure of knowledge of facts known peculiarly to the
speaker.  Manemann v. State, 878
S.W.2d 334, 338 (Tex. App.CAustin 1994, pet. ref=d); Wilson v. State, 884 S.W.2d 904, 906 (Tex. App.CSan Antonio 1994, no pet.); see Tex. R. Evid. 901(b)(4) (allowing the identification and
authentication through distinctive characteristics, taken in conjunction with
circumstances).

The State introduced a copy
of the recording made through the testimony of the services supervisor of the
Benbrook Police Department, Radonna Goetz, who is in charge of the 911
records.  She identified the person who
received the 911 call as dispatcher Calhoun Montgomery.  The other voice on the tape identifies
himself as Brent Batteas, states that he was watching the injured child, and
gives the address of the apartment where the incident occurred. These
statements, in conjunction with the circumstances surrounding the incident,
which were known only to Appellant, sufficiently identify Appellant as the caller
on the tape. 

Therefore, we hold that the
trial court did not abuse its discretion in admitting the telephone recording
into evidence.  Accordingly, we overrule
Appellant=s second
point.

DUE DILIGENCE IN ASCERTAINING
THE MANNER AND MEANS








In his third point, Appellant
asserts that the trial court committed reversible error in denying Appellant=s motion for instructed verdict because the State failed to show due
diligence by the grand jury to ascertain the manner or means of causing the
injury to Zachary. He complains that the grand jury members did not exercise
due diligence in determining the manner and means  of the cause of Zachary=s injury because the sole person to testify before the grand jury was
Olson, and the grand jury did not call any doctors, forensic specialists, or
police officers to testify. 

A claim that the trial court
improperly denied a motion for instructed verdict is a claim that the evidence
is legally insufficient to support a conviction.  Madden v. State, 799 S.W.2d 683, 686
(Tex. Crim. App. 1990), cert. denied, 499 U.S. 954 (1991).  In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the verdict in order to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v. State, 165 S.W.3d
691, 693 (Tex. Crim. App. 2005).








Appellant relies upon Rosales
v. State, which articulates and applies the rule that when the indictment
alleges that the weapon used was unknown to the grand jury, but the evidence at
trial establishes what weapon was used, the State must prove that the grand
jury used due diligence in attempting to ascertain what weapon was used.  See 4 S.W.3d 228, 231 (Tex. Crim. App.
1999), cert. denied, 531 U.S. 1016 (2000).  Under the rule as stated in  Rosales, if the evidence at trial
fails to establish what instrument or weapon was used, a prima facie showing is
made that the instrument or weapon was unknown to the grand jury.  Id.; Hicks v. State, 860 S.W.2d
419, 424 (Tex. Crim. App. 1993), cert. denied, 512 U.S. 1227 (1994). 

However, in Malik v. State,
the Texas Court of Criminal Appeals held that the sufficiency of the evidence
is measured by the elements of the offense as defined by the hypothetically
correct jury charge for the case.  953
S.W.2d 234, 240 (Tex. Crim. App. 1997). 
In Rosales, the court recognized that, in spite of its
application of the Hicks rule, in light of its ruling in Malik, Athe rule in cases like Hicks is no longer viable.@  Rosales, 4 S.W.3d at
231.








Since Rosales, the
Texas Court of Criminal Appeals has held that a hypothetically correct jury
charge need not incorporate allegations that give rise to immaterial variances.
 Gollihar v. State, 46 S.W.3d 243,
256 (Tex. Crim. App. 2001).  A nonessential
element allegation, such as an allegation that the object used to cause injury
was unknown to the grand jury, may properly be excluded from a hypothetically
correct charge.  Richards v. State,
54 S.W.3d 348, 350 (Tex. App.CHouston [1st Dist.] 2001, pet. ref=d); see Gollihar, 46 S.W.3d at 256.  Accordingly, even if the evidence was
insufficient to show that the object was unknown to the grand jury after due
diligence, such a variance would be immaterial.[3]


No witness testified with
certainty regarding the instrumentality of death.  There was no variance, therefore, between the
proof at trial and the charging instrument, which alleged that death was caused
by a manner and means unknown to the grand jury.  We hold that the evidence is legally
sufficient to support the jury's verdict, and we therefore overrule Appellant=s third point.

PRIOR INCONSISTENT STATEMENTS

In his fourth point,
Appellant complains that the trial court committed reversible error by refusing
to admit two prior inconsistent statements made by Olson, which were
inconsistent with her testimony at trial. 








We review a trial court=s admission or exclusion of evidence for an abuse of discretion.  Rankin v. State, 974 S.W.2d 707, 718
(Tex. Crim. App. 1996) (op. on reh=g); Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1991) (op. on reh=g).  A trial court does not abuse its discretion,
and we will not reverse a trial court=s ruling, unless the ruling falls outside the zone of reasonable
disagreement.  Rankin, 974 S.W.2d
at 718.  A trial court abuses its
discretion when it acts without reference to any guiding rules and principles
or acts arbitrarily or unreasonably.  Montgomery,
810 S.W.2d at 380. 

Texas Rule of Evidence 613(a)
governs the admission of prior inconsistent statements.  Rule 613(a) prohibits extrinsic evidence of a
prior inconsistent statement, unless the witness unequivocally denies making
the statement.  See Tex. R. Evid. 613(a).  Thus, the proper predicate for the admission
of extrinsic evidence of a prior inconsistent statement is that the witness is
told the contents of the statement and time, place, and person to whom it was
made, the witness is afforded an opportunity to explain or deny the statement,
and the witness denies what the statement contains. See id.  Therefore, if a witness admits making the
prior inconsistent statement, this precludes the admission of extrinsic
evidence of the statement.  Huff v.
State, 576 S.W.2d 645, 647 (Tex. Crim. App. [panel op.] 1979); see Tex. R. Evid. 613(a).








In the present case,
Appellant questioned Olson about the prior statements she gave to police, and
she acknowledged that she made the statements. 
Because she admitted making the statements, extrinsic evidence of the
statements was not admissible. 
Therefore, we hold that the trial court did not abuse its discretion in
refusing to admit the statements into evidence. 
We overrule Appellant=s fourth point.

EVIDENCE OF PRIOR DEMEANOR

In his sixth point, Appellant
contends that the trial court committed reversible  error in refusing to admit testimony
concerning a prior demeanor of a crucial witness.  Outside the presence of the jury, Appellant
called his investigator, Danny LaRue, who had observed Olson testify in both
trials against Appellant.  Appellant
intended on questioning LaRue about the demeanor of Olson at the first trial as
compared to her demeanor when she testified during the second trial against
Appellant.  Appellant would have LaRue
testify that during the first trial, he saw basically no emotion from Olson,
but during the second trial, she was very emotional and at times cried.  The trial court denied Appellant=s request. 

We review a trial court=s admission or exclusion of evidence for an abuse of discretion.  Rankin, 974 S.W.2d at 718; Montgomery,
810 S.W.2d at 391.  A trial court does
not abuse its discretion, and we will not reverse a trial court=s ruling, unless the ruling falls outside the zone of reasonable
disagreement. Rankin, 974 S.W.2d at 718. 
A trial court abuses its discretion when it acts without reference to
any guiding rules and principles or acts arbitrarily or unreasonably.  Montgomery, 810 S.W.2d at 380. 








Appellant contends that the
evidence regarding Olson=s demeanor
is akin to prior inconsistent statements because her demeanor when she
testified at the first trial differed from her demeanor while testifying in the
second trial. However, the plain language of Rule 613(a) allows the
presentation of a prior inconsistent statement, whether oral or written, and
Olson=s prior demeanor was not a prior statement.  Additionally, a witness may be impeached
through opinion and reputation evidence of a witness relating to the witness=s character for truthfulness or untruthfulness.  See Tex.
R. Evid. 608.  The testimony that
Appellant intended on eliciting from LaRue does not fall within this category.

Appellant further asserts
that every witness should be judged by his or her manner of testimony, and that
by denying this testimony, the trial court denied the trier of fact this
opportunity.  We disagree.  The jury had the opportunity to observe Olson
when she testified at the second trial and was able to judge her demeanor. 

Therefore, we hold that the
trial court did not abuse its discretion by disallowing the testimony of the
investigator regarding Olson=s demeanor at the first trial against Appellant.  We overrule Appellant=s sixth point.

INSTRUCTION ON VOLUNTARY
INTOXICATION








In his seventh point,
Appellant complains that the trial court committed reversible error in failing
to charge the jury on the issue of voluntary intoxication as mitigation in
punishment.  At trial, Appellant objected
to the court=s charge
because it did not Acharge the
jury that if there is any evidence of intoxication at the time of the offense,
that they may consider that in mitigation if they choose to do so.@  The trial court overruled the
objection. 

Appellate review of error in
a jury charge involves a two-step process. 
Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether error
occurred.  If so, we must then evaluate
whether sufficient harm resulted from the error to require reversal.  Id. at 731-32.  Error in the charge, if timely objected to in
the trial court, requires reversal if the error was Acalculated to injure the rights of [the] defendant,@ which means no more than that there must be some harm to the
accused from the error.  Tex. Code Crim. Proc. Ann. art. 36.19
(Vernon 1981); see also Abdnor, 871 S.W.2d at 731-32; Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=g).  In other words, a properly
preserved error will call for reversal as long as the error is not
harmless.  Almanza, 686 S.W.2d at
171.  In making this determination, Athe actual degree of harm must be assayed in light of the entire jury
charge, the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel and any other relevant information
revealed by the record of the trial as a whole.@  Id.; see also Ovalle
v. State, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).








Voluntary intoxication is not
a defense to a crime.  Tex. Penal Code Ann. ' 8.04(a) (Vernon 2003). 
However, Texas Penal Code section 8.04(b) provides that evidence of
temporary insanity caused by intoxication may be introduced by the actor in
mitigation of the penalty attached to the offense for which he is tried.  Id. at 
8.04(b).  When temporary insanity
is relied upon as a defense and the evidence tends to show that such insanity
was caused by intoxication, the defendant is entitled to an instruction on
temporary insanity by reason of intoxication. 
Id. at 8.04(c). 

Before a defendant is
entitled to an instruction on voluntary intoxication as a mitigating factor, it
is first necessary that the defendant establish that the intoxication rendered
him temporarily insane, that is, his voluntary intoxication caused him (1) not
to know his conduct was wrong or (2) it caused him to be incapable of
conforming his conduct to the requirements of the law he violated.  Cordova v. State, 733 S.W.2d 175, 190
(Tex. Crim. App. 1987), cert. denied, 487 U.S. 1240 (1988). 








Appellant does not direct us
to any point in the record where the issue of temporary insanity caused by
voluntary intoxication was raised by the evidence.  Appellant merely contends that the evidence
rises to a level of temporary insanity because the nature of the injuries to
the child show the level of insanity. 
The record reveals some evidence that Appellant may have consumed
alcohol on the evening in question. 
Sergeant Alvin Campbell testified that Appellant said that he had been
drinking in the parking lot with Olson for an hour, and Appellant said that
while he was in the apartment with Olson, he was intoxicated; however,
Appellant presented no evidence that, by reason of intoxication, he did not
know that his conduct was wrong or that he was incapable of conforming his
conduct to the law.

After carefully reviewing the
record in this case, we are unable to find any evidence that might be
interpreted to demonstrate that Appellant was temporarily insane by reason of
voluntary intoxication on the night in question.  Therefore, we hold that the trial court did
not err in refusing to instruct the jury on temporary intoxication as a
mitigating factor in punishment. 
Accordingly, we overrule Appellant=s seventh point. 

CONCLUSION

Having overruled Appellant=s seven points, we affirm the trial court=s judgment. 

 

DIXON W. HOLMAN

JUSTICE

 

PANEL
A:  CAYCE, C.J.; LIVINGSTON and HOLMAN,
JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  February 16, 2006











[1]See Tex. R. App. P. 47.4.





[2]See
Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S. Ct. 1602, 1612
(1966).





[3]We
note that the evidence at trial was inconclusive about what instrument was used
to cause Zachary=s
injuries, and a member of the grand jury that indicted Appellant testified that
the grand jury was not able to determine the manner and means of the
injury.  Even under pre‑Gollihar
case law, the State did not need to prove the grand jury used Adue
diligence@ in
attempting to ascertain the weapon used in this case.  See Hicks, 860 S.W.2d at 425.