# NO. 12-22-00313-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ROBERT CLAYTON BRADLEY,*<br>*APPELLANT* | § | *APPEAL FROM THE 392ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Appellant, Robert Clayton Bradley, appeals his conviction for murder. In one issue, he claims that the trial court erred by failing to grant a mistrial. We affirm.

## BACKGROUND

In or around November 2017, Ashley Holmes entered into a sexual relationship with Rodney Abbott. This relationship ended in March 2018, when Abbott was incarcerated for approximately one month. While Abbott was incarcerated, Holmes began a sexual relationship with Appellant, who had been Abbott's friend. On or about May 28, 2018, after Abbott's release from jail, he physically assaulted Holmes. When Holmes told Appellant about the assault, Appellant expressed that he was very angry and wanted to harm Abbott.

On the morning of May 30, 2018, Appellant and Holmes engaged in sexual relations and intravenously injected methamphetamine. At approximately 8:00 a.m., Appellant set out in his truck, with Holmes as a passenger, to take Holmes back to her residence. However, Appellant subsequently made a turn onto FM 2709, a road not usually on the route to Holmes's residence. At around the same time that morning, Abbott was walking along FM 2709 with a dog. He encountered a pipeline surveyor, with whom he spoke briefly, and then continued walking down

the road. Abbott encountered Appellant driving down the same road and threw a large rock, hitting the windshield of the truck.

Appellant became angry but continued driving on FM 2709 away from Abbott for approximately one mile, during which Holmes encouraged him to keep going and bring her back home. Holmes attempted to call her brother, but Appellant took her cell phone from her. Appellant then turned his vehicle around and "floor[ed]" the truck back toward where he last saw Abbott, shouting to Holmes, "I am going to kill him." Holmes attempted to get Appellant to stop, both verbally and by punching him several times, but Appellant did not respond; Holmes subsequently laid down in the seat and closed her eyes. The weather was sunny and clear that morning, and the roadway was straight and the view unobstructed for approximately one fourth to a half mile in the direction Appellant was traveling toward Abbott. Matthew Lux, the pipeline surveyor, heard the "roar" of the truck and testified that he saw the truck drive back as fast as he believed the vehicle was capable of traveling. He did not hear any braking, but saw a man driving the truck, although he did not see a passenger.

As Appellant neared Abbott, traveling at over 100 miles per hour, he struck Abbott with force sufficient to dismember his leg and buttock from his body (injuries which the testifying medical examiner stated were the most devastating she had ever seen resulting from a vehicle-pedestrian collision). Appellant then veered from the road and ran into a tree, after which he exited the truck and fled to his grandmother's house. Holmes was injured in the collision and unable to leave the vehicle, but when EMS personnel arrived, she stated that Appellant had been driving. DNA testing later confirmed that Appellant's blood was present on the driver's side of the truck, and despite Appellant's statement that Holmes was the one driving, his own injuries were consistent with his chest striking the steering wheel upon the truck impacting the tree. Appellant was subsequently arrested and indicted for the offense of murder. He pleaded "not guilty" to the offense, and this matter proceeded to a jury trial.

At trial, the State admitted into evidence and published to the jury Holmes's recorded statement. The State offered the video to show that Holmes's previous statements to law enforcement were consistent. However, the State failed to redact a portion of the video in which Holmes states, "I have nothing with [Appellant]. You know I just met him. He just got out of prison." Defense counsel objected, after which the trial court immediately excused the jury for afternoon recess and convened an off-the-record conference in chambers with the attorneys.

Shortly thereafter, the court went back on the record (still outside the jury's presence) and replayed the objected-to portion of Holmes's video statement. Defense counsel requested a mistrial (but did not request any instruction), while the State asked that the court give a curative instruction. Subsequently, the court denied Appellant's motion for mistrial and stated that he would instruct the jury to disregard the statement regarding Appellant's previous incarceration. Defense counsel did not object to the language of the curative instruction proposed by the court, and upon the jury's return to the courtroom, the court instructed the jury to disregard the objected-to portion of Holmes's statement:

> Ladies and gentlemen of the jury, you were just listening to State's Exhibit 119. And if you heard any evidence on State's Exhibit 119 that was just played for you that anybody had just got out of prison, you are to wholly disregard it and not consider it for any purpose whatsoever, if you did hear it.

The jury found Appellant "guilty" of the offense of murder, but also found that Appellant acted out of sudden passion. Appellant pleaded "true" to one enhancement paragraph, alleging a prior felony conviction. The jury assessed punishment of thirty years' imprisonment and a $30,000.00 fine. This appeal followed.

## MOTION FOR MISTRIAL

Appellant contends that the trial court erred when it denied his motion for mistrial because Holmes's statement that Appellant was recently incarcerated caused incurable prejudice, the curative instruction was not promptly given, and the language of the curative instruction itself was prejudicial.

### Standard of Review and Applicable Law

A trial court's denial of a mistrial is reviewed for abuse of discretion, and the trial court's ruling must be upheld if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). We view the evidence in the light most favorable to the trial court's ruling. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Mistrial is the appropriate remedy when error is so prejudicial that expenditure of further time and expense would be futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). It is a remedy intended for extreme circumstances when prejudice is incurable and less drastic alternatives have been explored. *Ocon*, 284 S.W.3d at 884. Furthermore, instructions to the jury generally are

considered sufficient to cure improprieties that occur during trial, and we generally presume that a jury followed the judge's instructions in the absence of evidence that it did not. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Ladd*, 3 S.W.3d at 567.

Whether a witness's inadvertent reference to an extraneous offense warrants a mistrial is dependent on the particular facts of the case. *Ladd*, 3 S.W.3d at 567. Such a reference is generally cured by a prompt instruction to disregard. *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009). A mistrial should be granted only in "the most egregious" cases, where the "reference was clearly calculated to inflame the minds of the jury or was of such damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds." *Id.* (quoting *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998)); *Williams v. State*, 417 S.W.3d 162, 176 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd).

## Analysis

Texas courts, including the Court of Criminal Appeals, have repeatedly held that a witness's brief reference to the defendant's previous incarceration, particularly absent any details about the offense that resulted in said incarceration, is cured by an instruction to disregard. *See e.g.*, *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992) ("unembellished reference" to prior incarceration, stating that defendant "had recently been released from the penitentiary," rendered harmless by curative instruction); *McBurnett v. State*, 629 S.W.3d 660, 662–63 (Tex. App.—Fort Worth 2021, pet. ref'd) (witness statement that he visited the defendant in the county jail to collect a DNA sample not sufficiently inflammatory to warrant mistrial); *Smith v. State*, 491 S.W.3d 864, 872 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (witness's reference to "when [the defendant] got out of jail that last time…" cured by instruction to disregard); *Casey v. State*, 349 S.W.3d 825, 835 (Tex. App.—El Paso 2011, pet. ref'd) (witness's unembellished statement that she "knew about the previous times that [the defendant] was in jail" rendered harmless by curative instruction). Here, although Holmes's reference to Appellant's previous incarceration was recorded rather than spontaneous, the reference was "unembellished and mirrored those references typically cured by an instruction to disregard." *See McBurnett*, 629 S.W.3d at 663. While the reference to Appellant's incarceration was inadmissible, it was "not so inflammatory as to undermine the efficacy of the trial court's instruction to disregard," and Appellant cites no evidence suggesting the jury did not obey the court's instruction. *See Kemp*, 846 S.W.2d at 308.

Appellant further contends that the trial court's instruction was necessarily ineffective because of the time elapsed between when Holmes's inadmissible statement was played for the jury and when the trial court instructed the jury to disregard the statement, a period lasting approximately forty-four minutes. The promptness of an instruction to disregard is a factor for consideration in determining the efficacy of the instruction; however, it is not necessarily the deciding factor. *Hackett v. State*, 160 S.W.3d 588, 592 (Tex. App.—Waco 2005, pet. ref'd). Here, Appellant's counsel objected to Holmes's statement, and the court immediately dismissed the jury for its afternoon recess. From that time until the jury returned, the parties were first in conference with the judge and then on the record arguing Appellant's objection and subsequent motion for mistrial. When the jurors reentered the courtroom, the first thing they heard was the court's instruction to disregard. *See Rogers v. State*, 200 S.W.3d 233, 238 n.5 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (instruction to disregard given "after a discussion with counsel outside the presence of the jury but … before any further testimony or discussion was had in the jury's presence" sufficiently prompt).

It is further notable that in this case, Appellant did not "promptly" *request* a curative instruction. *See London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016) (a timely request is one made "as soon as the grounds for it become apparent"); *Boone v. State*, 60 S.W.3d 231, 238 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (request for instruction to disregard is timely if made as soon as the ground of request becomes apparent.). Instead, Appellant's trial counsel requested a mistrial, and the record shows that when the court offered a curative instruction, asking "So is there any proposed curative instruction to give to the jury before I bring them back in?", defense counsel explicitly refused, stating, "None on our part." Only once the court determined that it would issue an instruction to disregard did defense counsel acquiesce to the court's proposed language, and the jury was brought back into the courtroom and given said instruction very shortly thereafter. *Cf. Pouncy v. State*, No. 01-01-01048-CR, 2002 WL 31388799, at *4 (Tex. App.—Houston [1st Dist.] Oct. 24, 2002, pet. ref'd) (mem. op., not designated for publication) (finding instruction promptly given when defendant moved immediately for mistrial and did not request an instruction to disregard until the next morning, which the trial court granted). We conclude that the time elapsed between Appellant's initial objection and when the jury received the instruction did not render said instruction ineffectual.

5

Finally, regarding Appellant's complaint about the wording of the trial court's instruction to the jury, we note that Appellant's counsel was consulted about the proposed language of said instruction, including the wording "that anybody had just got out of prison," and made no objection to same. By not objecting at trial, Appellant waived any complaint on appeal concerning the wording of the instruction, including his argument that the instruction repeated the testimony the jury was not to consider. *See Parker v. State*, No. 11-16-00175-CR, 2018 WL 3151506, at *5 (Tex. App.—Eastland June 28, 2018, no pet.) (mem. op., not designated for publication) (complaint waived because "Appellant did not object to the instruction that the trial court gave or make a request for a different instruction to disregard."); *Wilson v. State*, 884 S.W.2d 904, 906 (Tex. App.—San Antonio 1994, no writ) (nothing preserved for appeal when defendant failed to object in the trial court to any insufficiencies in the instruction to disregard); *Gonzalez v. State*, 647 S.W.2d 369, 374 (Tex. App.—Corpus Christi 1983, pet. ref'd) (defendant could not, for first time on appeal, argue trial court's language in instruction to disregard was insufficient to cure harm).

In summary, we discern no abuse of discretion in the trial court's denial of Appellant's motion for mistrial. The trial court's determination that its instruction to disregard was sufficient to cure any harm was within the zone of reasonable disagreement. *See Coble*, 330 S.W.3d at 292; *Ladd*, 3 S.W.3d at 567. Consequently, we overrule Appellant's sole issue.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the judgment of the trial court.

JAMES T. WORTHEN
Chief Justice

Opinion delivered January 10, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 10, 2024**

**NO. 12-22-00313-CR**

**ROBERT CLAYTON BRADLEY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 392nd District Court

of Henderson County, Texas (Tr.Ct.No. CR18-0469-392)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*