BATTEAS v. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-036-CR

STEPHEN BRENT BATTEAS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Stephen Brent Batteas appeals his conviction for injury to a child causing serious bodily injury.  The jury found Appellant guilty and assessed a sentence of life imprisonment.  The trial court sentenced Appellant accordingly.  In seven points, Appellant complains that the trial court committed reversible error in overruling his motion to suppress the second and third statements he gave to police, in admitting a 911 tape over Appellant’s objection, in denying Appellant’s motion for an instructed verdict because the State failed to show due diligence by the grand jury to ascertain the manner or means of causing injury, by refusing to admit two prior inconsistent statements by a witness, in submitting paragraphs one and two of the indictment that had previously been waived by the State, in refusing to admit testimony concerning a prior demeanor of a crucial witness, and in failing to charge the jury on the issue of voluntary intoxication as mitigation in punishment.  We affirm.

BACKGROUND

Christin Chanel hired Appellant, an ex-boyfriend, to care for her sixteen-month-old son, Zachary, for a couple of weeks beginning in April 2002 until a permanent caretaker could begin caring for Zachary.  On April 28, 2002, Chanel picked Appellant up from his home and drove him to her apartment.  That evening, Chanel and Appellant watched television together and then Appellant took Chanel’s car and left the apartment for a while.  After Appellant returned, Marcheta Paulina Olson went to the apartment complex to meet him, and the two sat talking in the car at the apartment complex.  Later, Chanel called Appellant on Olson’s cellular telephone and asked him to return to the apartment so she could go to her mother and stepfather’s horse stables where a horse was expected to give birth that evening.

Appellant and Olson returned to the apartment and Chanel left to go to the horse stables.  When Chanel left the apartment, Zachary was asleep in his crib.  Olson remained at the apartment with Appellant when Chanel left.  Olson was having problems with her contact lenses, so she and Appellant went to the bathroom to find contact solution.  While in the bathroom, Olson heard Zachary cry, and Appellant went into the bedroom to check on him.  Appellant told Olson that Zachary was fine. 

Appellant and Olson then returned to the living room.  They heard a noise coming from his room that sounded like a toy, so Appellant again checked on Zachary and told Olson he was fine.  Shortly thereafter, Olson left the apartment. 

At approximately 3:45 a.m., Appellant called 911 and reported that Zachary was not breathing.  When emergency personnel arrived, they found Zachary laying on the sofa bed in the living room.  His body temperature was low, he was not breathing, and he had no pulse.  Police questioned Appellant as the paramedics tended to Zachary.  Appellant testified at a pretrial suppression hearing that the officer instructed him to sit on the curb and he did not feel free to leave.  Subsequently, police called Chanel and informed her that Zachary had been transferred to the hospital.  Police also called Olson back to the scene to give a statement, and she arrived approximately twenty minutes later. 

Appellant later agreed to give a statement to police and was taken by patrol car to the police station.  Appellant testified at the pretrial suppression hearing that he felt like he had to ride in the police car to the police station, and he did not feel free to leave while at the police station.  Sergeant Arvin Campbell testified that Appellant was not in custody when he gave the statement that morning, but he was a suspect.  Sergeant Campbell testified that he informed Appellant that he was not under arrest and read him 
Miranda 
warnings.
(footnote: 2)  Appellant then wrote his statement out for police.  When he finished giving his statement, Appellant left the police station with Olson. 

A few days following the incident, Sergeant John Van Ness went to Appellant’s house to obtain a second statement from Appellant.  Sergeant Van Ness did not take Appellant into custody after he made his second statement. The following day, Sergeant Van Ness went back to Appellant’s house to clarify some of the things that Appellant had previously stated.  Sergeant Van Ness testified that when he spoke with Appellant, Appellant was not under arrest and was not handcuffed.  He further testified that he never made any threats or promises to Appellant to encourage him to make the statements. 

Zachary was pronounced dead at the hospital the morning following the incident.  He had sustained severe blunt force trauma to the head, which caused a large subdural hematoma, among other things. 

DOUBLE JEOPARDY

In his fifth point, Appellant contends that the trial court committed reversible error in submitting paragraphs one and two of the indictment, which had previously been waived by the State.  The State contends that Appellant failed to preserve his claim for review.

According to the rules of appellate procedure, in order to preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context.  
Tex. R. App. P.
 33.1.  At trial, Appellant moved for an instructed verdict on paragraphs one and two stating that “the court will remember in the last trial the State waived those counts, and we feel that [the State could not] now try to go on them because they’ve already waived them.”  This objection was sufficient to inform the trial court of the nature of Appellant’s complaint to give the trial court the opportunity to rule on the objection, especially in light of the fact that the same trial judge presided over both trials.  
See id
.  Therefore, we turn to the merits of Appellant’s double jeopardy contention. 

The indictment charged Appellant for a single count of knowingly causing serious bodily injury to a child.  Count one of the indictment charged Appellant with causing serious bodily injury in three separate paragraphs alleging alternative means of charging this offense.  The first paragraph charged him with causing serious bodily injury to Zachary by manner and means unknown to the grand jury, the second paragraph alleged that Appellant caused the serious bodily injury by shaking Zachary with his hand, and the third paragraph alleged that Appellant caused the serious bodily injury by striking Zachary with or against an object unknown to the grand jury.  Count one of the indictment also included an allegation that Appellant used a deadly weapon in committing the offense.

Appellant had previously been tried for charges stemming from the same  incident, but the jury was unable to reach a verdict in the first trial.  The trial court declared a mistrial.  At the first trial, the State waived paragraphs one and two of the indictment and proceeded solely on paragraph three.  The docket sheet and the judgment from the first trial indicate that Appellant entered a not guilty plea only to paragraph three, and the jury was charged only on paragraph three. 

At the second trial, Appellant moved for an instructed verdict as to paragraphs one and two because the State had waived the paragraphs in Appellant’s first trial.  The trial court denied Appellant’s request for an instructed verdict, but charged the jury only on paragraphs one and three because the State later waived paragraph two of the indictment. 

The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense.  U.S. C
ONST
. amend. V.  Generally, this clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.  
Brown v. Ohio
, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); 
Ex parte Herron
, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990) (op. on reh'g).  
In a jury trial, jeopardy attaches when the jury is impaneled and sworn.  
Crist v. Bretz
, 437 U.S. 28, 98 S. Ct. 2156 (1978);  
Alvarez v. State
, 864 S.W.2d 64, 65 (Tex. Crim. App. 1993). 

In 
Ex parte McAfee
, the court of criminal appeals considered a factual situation very similar to the present case.  761 S.W.2d 771 (Tex. Crim. App. 1988).  In 
McAfee
, the State abandoned the first paragraph of a two paragraph indictment in two separate jury trials.  
Id. 
at 771.  Both of these trials resulted in hung juries.  
Id.  
McAfee later pleaded guilty to the first paragraph of the indictment and received punishment of three years’ confinement.  
Id. 
at 772.  By a postconviction writ of habeas corpus, McAfee argued his conviction was barred under the principle of double jeopardy because the State had twice abandoned the first paragraph of the indictment.  
Id.  
The court of criminal appeals disagreed, holding that, absent a final judgment, McAfee remained  under the initial jeopardy; therefore, a retrial for the same offense would not be double jeopardy.  
Id. 
at 773. 

In the present case, Appellant’s first trial ended in a mistrial. Subsequently, when he was retried for the same offense, he remained under the initial jeopardy.  
See id.
  Thus, we hold that Appellant was not twice put in jeopardy for the charges included in the indictment.  We overrule Appellant’s fifth point.

ADMISSIBILITY OF THE SECOND AND THIRD STATEMENTS 

In his first point, Appellant complains that the trial court committed reversible error in overruling his motion to suppress the second and third statements he gave to Sergeant Van Ness.  He contends that, although he was not in custody at the time he gave the second and third statements, he did not feel free to leave, yet he was not Mirandized or informed of his right to counsel.  The trial court determined that the statements Appellant gave to Sergeant Van Ness were not custodial in nature, and thus, the provisions of Texas Code of Criminal Procedure article 38.22 did not apply.

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

When reviewing a trial court’s ruling on a mixed question of law and fact, the court of appeals may review de novo the trial court’s application of the law of search and seizure to the facts of the case.  
Estrada
, 154 S.W.3d at 607.  When there are no explicit findings of historical fact, the evidence must be viewed in the light most favorable to the trial court’s ruling.  
Id
.  We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.  

The provisions of Article 38.22 and 
Miranda
 apply only to statements which stem from custodial interrogation. 
 
Miranda
, 384 U.S. at 444, 86 S. Ct. at 1612; 
Tex. Code Crim. Proc. Ann.
 art. 38.22, § 2 (Vernon 2005).  Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. 
 Oregon v. Mathiason
, 429 U.S. 492, 494, 97 S. Ct. 711, 713 (1977); 
Miranda, 
384 U.S. at 444, 86 S. Ct. at 1612. 

In the past, the court of criminal appeals has recognized four factors that are relevant to determining whether a person is in custody:  (1) probable cause to arrest, (2) subjective intent of the police, (3) focus of the investigation, and (4) subjective belief of the defendant. 
 Dowthitt v. State
, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996).  Under 
Stansbury v. California
, factors two and four have become irrelevant except to the extent that they may be manifested in the words or actions of police officers; the custody determination is based entirely upon objective circumstances.  
Dowthitt
, 931 S.W.2d at 254; 
see also Stansbury v. California
, 511 U.S. 318, 322-23, 114 S. Ct. 1526, 1528-29 (1994).  Thus, a person is in custody only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest.  
Dowthitt
, 931 S.W.2d at 254.  The reasonable person standard presupposes an innocent person.  
Id.
  Additionally, being the focus of the investigation, alone, does not equate to custody.  
Meek v. State
, 790 S.W.2d 618, 621 (Tex. Crim. App. 1990).

In the present case, Appellant acknowledged that he was not in custody when he gave the second and third statements to Sergeant Van Ness.  Appellant simply argues that he did not feel free to leave; however, the subjective belief of Appellant is irrelevant, because the determination is whether a reasonable person in Appellant’s situation would feel free to leave.  
See Dowthitt
, 931 S.W.2d at 254.  Appellant’s only other contention is that Sergeant Van Ness admitted that Appellant was a suspect at the time he took the second and third statements, but the mere fact that Appellant may have become the focus of the investigation does not equate to custody.  
See Meek
, 790 S.W.2d at 621.

At the pretrial suppression hearing, Sergeant Van Ness testified that he and Lieutenant Simonds interviewed a female and inquired as to Appellant’s whereabouts because they wanted to speak with him and they did not know where he was.  He testified that shortly thereafter, Appellant contacted him and said he would speak with the officers at his house.  Sergeant Van Ness testified that the first time he and Lieutenant Simonds went to Appellant’s house, he informed Appellant that they were there because Appellant allowed them to be there and that if he wanted them to leave at any time, it was his right to request that they leave.  After Appellant gave the second written statement, the officers left his house, and Appellant was not arrested or taken to the police station at that time. 

Sergeant Van Ness testified that he contacted Appellant a second time and asked if he and Lieutenant Simonds could return to clarify some inconsistencies between the statements.  Again, he testified that he informed Appellant that they were at his house because he allowed them to be there and that they would leave upon Appellant’s request.  He also testified that Appellant was free to leave at any time and was not under arrest.  Appellant then made the third statement to police. 

The circumstances involved demonstrate that Appellant was not in custody when he gave the second and third statements to Sergeant Van Ness. Therefore, it was not error for Appellant’s statements to be used against him even though 
Miranda 
warnings were not first administered to Appellant  before he gave the statements.  We overrule Appellant’s first point.

ADMISSION OF THE 911 TAPE

In his second point, Appellant contends that the trial court committed reversible error in admitting the 911 tape over Appellant’s objection.  He contends that the State did not meet the requirements for proper authentication because the State failed to identify the voices on the tape.

We review a trial court’s admission or exclusion of evidence for an abuse of discretion.  
Rankin v. State
, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on reh’g); 
Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).  A trial court does not abuse its discretion, and we will not reverse a trial court’s ruling, unless the ruling falls outside the zone of reasonable disagreement.  
Rankin
, 974 S.W.2d at 718.  A trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably.  
Montgomery
, 810 S.W.2d at 380.

Rule of evidence 901 governs the authentication requirement for the admissibility of evidence and is the only appropriate analysis for the authentication of recordings.  
See 
Tex. R. Evid.
 901; 
Angleton v. State
, 971 S.W.2d 65, 69 (Tex. Crim. App. 1998).  Subsection (a) states that the authentication requirement for admissibility of evidence is satisfied by proof sufficient to support a finding that the matter in question is what its proponent claims it is. 
 
Tex. R. Evid.
 901(a).  Subsection (b) provides a nonexclusive list of methods to authenticate evidence.  
Tex. R. Evid.
 901(b).  One example given is the testimony of a witness with knowledge that a matter is what it is claimed to be.  
Tex. R. Evid.
 901(b)(1).  Another is “[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at anytime under circumstances connecting it with the alleged speaker.”  Tex. R. Evid. 901(b)(5).  Additionally, the identity of a caller can be demonstrated by self-identification coupled with additional circumstances, such as the context and timing of the call, the contents of the statement, and disclosure of knowledge of facts known peculiarly to the speaker.  
Manemann v. State
, 878 S.W.2d 334, 338 (Tex. App.—Austin 1994, pet. ref’d); 
Wilson v. State
, 884 S.W.2d 904, 906 (Tex. App.—San Antonio 1994, no pet.)
; see
 
Tex. R. Evid.
 901(b)(4) (allowing the identification and authentication through distinctive characteristics, taken in conjunction with circumstances).

The State introduced a copy of the recording made through the testimony of the services supervisor of the Benbrook Police Department, Radonna Goetz, who is in charge of the 911 records.  She identified the person who received the 911 call as dispatcher Calhoun Montgomery.  The other voice on the tape identifies himself as Brent Batteas, states that he was watching the injured child, and gives the address of the apartment where the incident occurred. These statements, in conjunction with the circumstances surrounding the incident, which were known only to Appellant, sufficiently identify Appellant as the caller on the tape. 

Therefore, we hold that the trial court did not abuse its discretion in admitting the telephone recording into evidence.  Accordingly, we overrule Appellant’s second point.

DUE DILIGENCE IN ASCERTAINING THE MANNER AND MEANS

In his third point, Appellant asserts that the trial court committed reversible error in denying Appellant’s motion for instructed verdict because the State failed to show due diligence by the grand jury to ascertain the manner or means of causing the injury to Zachary. He complains that the grand jury members did not exercise due diligence in determining the manner and means  of the cause of Zachary’s injury because the sole person to testify before the grand jury was Olson, and the grand jury did not call any doctors, forensic specialists, or police officers to testify. 

A claim that the trial court improperly denied a motion for instructed verdict is a claim that the evidence is legally insufficient to support a conviction.  
Madden v. State
, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990), 
cert. denied
, 499 U.S. 954 (1991).  In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

Appellant relies upon 
Rosales v. State
, which articulates and applies the rule that when the indictment alleges that the weapon used was unknown to the grand jury, but the evidence at trial establishes what weapon was used, the State must prove that the grand jury used due diligence in attempting to ascertain what weapon was used.  
See
 4 S.W.3d 228, 231 (Tex. Crim. App. 1999), 
cert. denied
, 531 U.S. 1016 (2000).  Under the rule as stated in  
Rosales
, if the evidence at trial fails to establish what instrument or weapon was used, a prima facie showing is made that the instrument or weapon was unknown to the grand jury.  
Id.
; 
Hicks v. State
, 860 S.W.2d 419, 424 (Tex. Crim. App. 1993), 
cert. denied
, 512 U.S. 1227 (1994). 

However, in 
Malik v. State
, the Texas Court of Criminal Appeals held that the sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically correct jury charge for the case.  953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  In 
Rosales
, the court recognized that, in spite of its application of the 
Hicks 
rule, in light of its ruling in 
Malik
, “the rule in cases like 
Hicks 
is no longer viable.”  
Rosales
, 4 S.W.3d at 231.

Since 
Rosales
, the Texas Court of Criminal Appeals has held that a hypothetically correct jury charge need not incorporate allegations that give rise to immaterial variances. 
 Gollihar v. State
, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001).  A nonessential element allegation, such as an allegation that the object used to cause injury was unknown to the grand jury, may properly be excluded from a hypothetically correct charge.  
Richards v. State
, 54 S.W.3d 348, 350 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d); 
see Gollihar
, 46 S.W.3d at 256.  Accordingly, even if the evidence was insufficient to show that the object was unknown to the grand jury after due diligence, such a variance would be immaterial.
(footnote: 3) 

No witness testified with certainty regarding the instrumentality of death.  There was no variance, therefore, between the proof at trial and the charging instrument, which alleged that death was caused by a manner and means unknown to the grand jury.  We hold that the evidence is legally sufficient to support the jury's verdict, and we therefore overrule Appellant’s third point.

PRIOR INCONSISTENT STATEMENTS

In his fourth point, Appellant complains that the trial court committed reversible error by refusing to admit two prior inconsistent statements made by Olson, which were inconsistent with her testimony at trial. 

We review a trial court’s admission or exclusion of evidence for an abuse of discretion.  
Rankin v. State
, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on reh’g); 
Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).  A trial court does not abuse its discretion, and we will not reverse a trial court’s ruling, unless the ruling falls outside the zone of reasonable disagreement.  
Rankin
, 974 S.W.2d at 718.  A trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably.  
Montgomery
, 810 S.W.2d at 380. 

Texas Rule of Evidence 613(a) governs the admission of prior inconsistent statements.  Rule 613(a) prohibits extrinsic evidence of a prior inconsistent statement, unless the witness unequivocally denies making the statement.  
See 
Tex. R. Evid.
 613(a).  Thus, the proper predicate for the admission of extrinsic evidence of a prior inconsistent statement is that the witness is told the contents of the statement and time, place, and person to whom it was made, the witness is afforded an opportunity to explain or deny the statement, and the witness denies what the statement contains. 
See id
.  Therefore, if a witness admits making the prior inconsistent statement, this precludes the admission of extrinsic evidence of the statement.  
Huff v. State
, 576 S.W.2d 645, 647 (Tex. Crim. App. [panel op.] 1979); 
see 
Tex. R. Evid.
 613(a).

In the present case, Appellant questioned Olson about the prior statements she gave to police, and she acknowledged that she made the statements.  Because she admitted making the statements, extrinsic evidence of the statements was not admissible.  Therefore, we hold that the trial court did not abuse its discretion in refusing to admit the statements into evidence.  We overrule Appellant’s fourth point.

EVIDENCE OF PRIOR DEMEANOR

In his sixth point, Appellant contends that the trial court committed reversible  error in refusing to admit testimony concerning a prior demeanor of a crucial witness.  Outside the presence of the jury, Appellant called his investigator, Danny LaRue, who had observed Olson testify in both trials against Appellant.  Appellant intended on questioning LaRue about the demeanor of Olson at the first trial as compared to her demeanor when she testified during the second trial against Appellant.  Appellant would have LaRue testify that during the first trial, he saw basically no emotion from Olson, but during the second trial, she was very emotional and at times cried.  The trial court denied Appellant’s request. 

We review a trial court’s admission or exclusion of evidence for an abuse of discretion.  
Rankin
, 974 S.W.2d at 718; 
Montgomery
, 810 S.W.2d at 391.  A trial court does not abuse its discretion, and we will not reverse a trial court’s ruling, unless the ruling falls outside the zone of reasonable disagreement. 
Rankin
, 974 S.W.2d at 718.  A trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably.  
Montgomery
, 810 S.W.2d at 380. 

Appellant contends that the evidence regarding Olson’s demeanor is akin to prior inconsistent statements because her demeanor when she testified at the first trial differed from her demeanor while testifying in the second trial. However, the plain language of Rule 613(a) allows the presentation of a prior inconsistent statement, whether oral or written, and Olson’s prior demeanor was not a prior statement.  Additionally, a witness may be impeached through opinion and reputation evidence of a witness relating to the witness’s character for truthfulness or untruthfulness.  
See 
Tex. R. Evid.
 608.  The testimony that Appellant intended on eliciting from LaRue does not fall within this category.

Appellant further asserts that every witness should be judged by his or her manner of testimony, and that by denying this testimony, the trial court denied the trier of fact this opportunity.  We disagree.  The jury had the opportunity to observe Olson when she testified at the second trial and was able to judge her demeanor. 

Therefore, we hold that the trial court did not abuse its discretion by disallowing the testimony of the investigator regarding Olson’s demeanor at the first trial against Appellant.  We overrule Appellant’s sixth point.

INSTRUCTION ON VOLUNTARY INTOXICATION

In his seventh point, Appellant complains that the trial court committed reversible error in failing to charge the jury on the issue of voluntary intoxication as mitigation in punishment.  At trial, Appellant objected to the court’s charge because it did not “charge the jury that if there is any evidence of intoxication at the time of the offense, that they may consider that in mitigation if they choose to do so.”  The trial court overruled the objection. 

Appellate review of error in a jury charge involves a two-step process.  
Abdnor v. State
, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether error occurred.  If so, we must then evaluate whether sufficient harm resulted from the error to require reversal.  
Id.
 at 731-32.  Error in the charge, if timely objected to in the trial court, requires reversal if the error was “calculated to injure the rights of [the] defendant,” which means no more than that there must be 
some
 harm to the accused from the error.  
Tex. Code Crim. Proc. Ann
. art. 36.19 (Vernon 1981); 
see also Abdnor
, 871 S.W.2d at 731-32; 
Almanza v. State
, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g).  In other words, a properly preserved error will call for reversal as long as the error is not harmless.  
Almanza
, 686 S.W.2d at 171.  In making this determination, “the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.”  
Id.
; 
see also Ovalle v. State
, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).

Voluntary intoxication is not a defense to a crime.  
Tex. Penal Code Ann.
 § 8.04(a) (Vernon 2003).  However, Texas Penal Code section 8.04(b) provides that evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is tried.  
Id. 
at  8.04(b).  When temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was caused by intoxication, the defendant is entitled to an instruction on temporary insanity by reason of intoxication.  
Id
. at 8.04(c). 

Before a defendant is entitled to an instruction on voluntary intoxication as a mitigating factor, it is first necessary that the defendant establish that the intoxication rendered him temporarily insane, that is, his voluntary intoxication caused him (1) not to know his conduct was wrong or (2) it caused him to be incapable of conforming his conduct to the requirements of the law he violated.  
Cordova v. State
, 733 S.W.2d 175, 190 (Tex. Crim. App. 1987), 
cert. denied
, 487 U.S. 1240 (1988). 

Appellant does not direct us to any point in the record where the issue of temporary insanity caused by voluntary intoxication was raised by the evidence.  Appellant merely contends that the evidence rises to a level of temporary insanity because the nature of the injuries to the child show the level of insanity.  The record reveals some evidence that Appellant may have consumed alcohol on the evening in question.  Sergeant Alvin Campbell testified that Appellant said that he had been drinking in the parking lot with Olson for an hour, and Appellant said that while he was in the apartment with Olson, he was intoxicated; however, Appellant presented no evidence that, by reason of intoxication, he did not know that his conduct was wrong or that he was incapable of conforming his conduct to the law.

After carefully reviewing the record in this case, we are unable to find any evidence that might be interpreted to demonstrate that Appellant was temporarily insane by reason of voluntary intoxication on the night in question.  Therefore, we hold that the trial court did not err in refusing to instruct the jury on temporary intoxication as a mitigating factor in punishment.  Accordingly, we overrule Appellant’s seventh point. 

CONCLUSION

Having overruled Appellant’s seven points, we affirm the trial court’s judgment. 

DIXON W. HOLMAN

JUSTICE

PANEL A:  CAYCE, C.J.; LIVINGSTON and HOLMAN, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  February 16, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See Miranda v. Arizona
, 384 U.S. 436, 444-45, 86 S. Ct. 1602, 1612 (1966).

3:
We note that the evidence at trial was inconclusive about what instrument was used to cause Zachary’s injuries, and a member of the grand jury that indicted Appellant testified that the grand jury was not able to determine the manner and means of the injury.  Even under pre-
Gollihar
 
case law, the State did not need to prove the grand jury used “due diligence” in attempting to ascertain the weapon used in this case. 
 See Hicks
, 860 S.W.2d at 425.